We'll go ahead and begin with Ms. Trotten. Thank you, your honor. Good afternoon and may it please the court. Mr. Quinteros Guzman was subject to criminal liability based on a deportation where he was not permitted to access counsel. An alien may not be convicted of illegal re-entry if the deportation serving as a predicate for the offense was fundamentally unfair under 8 U.S.C. 1326d. Mr. Quinteros Guzman was deported through a procedure, expedited removal, that denied him access to counsel. This deportation was fundamentally unfair for purposes of section 1326d because he had both a due process and a statutory right to access counsel in his removal proceedings. In addition, he was prejudiced by that denial because... That's a very broad statement. We ought to break it up a little bit. There's one issue as to whether at the borders we have a due process issue at all, whether the constitution applies at all. And then we have a statutory question of whether the INA provides counsel or as you argue, the APA inserts itself where the INA doesn't speak and provides counsel. Both of those are complex questions and it might be good to not combine them. Yes, your honor. So with respect to the first question that you raised about the due process at the border, I think it's important to understand that Mr. Guzman's basis for a criminal offense. I agree. We held that a while back. In other words, we concluded it was not unconstitutional at the border because it's part of the sovereign privilege of the country to do that at the borders. We search people at the borders. We deny them entry. We discriminate against them. We do everything at the borders. But if that prosecution, then we give you the right to challenge it as unfair. But that doesn't necessarily mean to challenge it under the due process cost. The question is whether the due process that was allowed by the INA was followed and whether the fairness of that process was followed. And I think that's what we held. What was that in the Silva case? Yes, your honor. That would be Villareal Silva. So in that case, the court never actually reached the question of the fundamental fairness, the due process aspect of the fundamental fairness question because it determined that Mr. Silva couldn't show prejudice. So it never fully addressed the claim he raised, which also involved the right to access to counsel at the border. The court did recognize that he was entitled to judicial review, unlike the Supreme Court in Thoracicum, which noted that in the context of an immigration proceeding, an alien would not have a judicial review right. But because, as the court understands, because we're in illegal reentry proceedings, aliens do have different rights. But we don't, when we consider the former removal, expedited removal as part of a criminal case, we don't impose new requirements on the removal. We determine, we give you the right to challenge the removal as being unfair, meaning that the process wasn't filed or he didn't get a chance to have an explanation or he had papers and the officer said he didn't have papers. But if you basically have somebody walking up to the gate of the United States without papers and the gatekeeper says you can't come in, we don't provide a lawyer at that point. We just say, no, close the door and you don't come in. That's really expedited removal is or fraud. And so the question is whether that process was unfair. Now that leads to your second question too, though, is whether it was deliberate of Congress not to provide for counsel on that proceeding. And it's a little strange that somebody comes to the door, you don't let him into the United States because he doesn't have any travel papers. And then he says, I want an attorney. And of course you close the door, it says you can get attorney while you're in the, how many times have we had people come into New York on an airplane with no travel papers? We've seen several cases like that. I don't know how they get on the plane, but they do. And they come in with no travel papers and the INS puts them right on the plane and sends them back. And the question is, can they ask for an attorney at that point? I mean, that would be a strange process. Your Honor, I think the difference is that expedited removal is actually much broader than simply aliens who show up at the border and ask for entry. We're not at that limit. I mean, there's regulations that extend it, but the statute basically has someone who comes in with a false papers or no papers, a fraudulent papers or no papers. And there's regulations that extend the time and place and so forth. But here the man was clearly at the border within 25 miles and he didn't have entry and he was denied entry. It's sort of a straightforward expedited removal. Well, Your Honor, you raise a number of questions, but I want to correct one point at the beginning, which is that the statute actually provides for incredibly broad expedited removal. So what section 1225 provides is that aliens who have not been inspected, who have not been, who have crossed the border illegally, are deemed for the purposes of immigration to not be admitted. And so it's a legal fiction that these people are still at the border for purposes of immigration law, but as a practical matter, they're in the country. And the statute applies to anyone who is not admitted in terms of that legal fiction, who can't show continuous legal presence for at least two years. What the regulations have done is actually limit that discretion. So initially, after 1996, when this provision was enacted, it was initially limited to aliens at the border. In 2004, it was broadened to include aliens within 100 miles of the border and 14 days of entry. In 2019, the government... You're not challenging the breadth of that provision. You're challenging a man who's within 25 miles, his first engagement in the United States is to meet an officer who demands papers and doesn't get any. And it seems to me, if you're challenging the constitutionality of the whole provision, I don't think you did so. But if you are, that's another issue. But here we have a man that falls within the very traditional notion, he's at the gate and he's denied entry because he has no papers. And so now the question is, was it unfair, the process they used to discover that? I thought they went through every step that the statute required, but maybe you can tell me differently. We're not challenging that they complied with the extreme... You're challenging the fact he wasn't given a lawyer at that point. Yes. Yes. He was inside the country. Courts have generally recognized... How far was he from the river, the Rio Grande? So the I-213 in his case does not specify exactly where he was. I believe there's some coordinates in that, but we never went into the record. There's no indication that he was like Mr. Ossigam basically in the process of crossing the border. He was inside the United States. Counsel, wasn't it the next day? He said he came in around 9.30 the previous night. Yes, that's correct. He was apprehended the next day. So it couldn't have gotten far. Well, he was apprehended in Texas, I think in the... The river, the Rio Grande, and he was picked up. I just wondered how far he was from the border. I was going around 25 miles, 100 miles. I thought he was right close to the river. I didn't... Maybe you knew. I don't think he was far from the border. I think I can... I know, but that doesn't help me. I'm sure he wasn't very far from the border, but I'm like he was 10 feet. Was he in the water or was he five miles away? I don't know. But they got him and they shipped him out. And then a couple of years later, he was where? In Virginia somewhere. Yes, Your Honor. And our position is that for aliens who are in criminal proceedings now, based on this prior deportation, there has to be some basic due process. And Thurasigam has... Well, what's that case that... We had a case here in 2016, Lopez-Colazo. Yes. Judge Traxler wrote an opinion and Judge Gregory wrote a short dissent. And the government conceded that he was supposed to have a lawyer. What's the distinction between that one and this one, if any? Well, I think Lopez-Colazo is important for this court to look at because the court and the government agreed in Lopez-Colazo that that case complied with the minimum, with due process. And in that case, he was... The procedures for administrative removal, which is what he had. It's a different kind of explanation. But they said it was harmless error in the context of his case. But the government conceded he was supposed to have a lawyer. Was that a statutory right or a due process right? Or what were they conceding there? That's a statutory right. But the court said that that complied with the requirements of due process. There's no reason why the line should be drawn differently for aliens and administrative removal than it should be for aliens and expedited removal. Both are streamlined, limited procedures that don't provide a hearing. But the requirements of due process... And Lopez-Colazo was an expedited removal, correct? It was an administrative removal. So when we say expedited removal, there are two kinds of expedited removal. There's the kind, there's section 1225 expedited removal, which is what we have here. That's the expedited removal for aliens who haven't been admitted, who are, in this case, who are close to the border or who haven't otherwise been admitted. Administrative removal is the other kind, and it's for aliens who've been convicted of an aggravated felony. Now, an administrative removal, does a statute provide for an attorney? It does. It does provide for an attorney. Here, the statute is silent. It does not specifically provide for an attorney. It does not say that there is no right to an attorney. The regulations, however, take the position that there's no right to an attorney. Given this, our position is also that under the Administrative Procedure Act, because the immigration, the INA, does not speak directly to this and does not expressly supersede section 555 of the Administrative Procedure Act, that section should apply and also provides an independent right to an attorney. So under the, under Thoracicum, which reaffirmed the Supreme Court's holding in whatever procedure is authorized by Congress, that is due process as far as an alien denied entry is concerned. Are you arguing that he should have been provided an attorney or that he should have simply been advised that he could try to get an attorney if he could afford one? It wasn't a Miranda-type thing, was it? No, we're not arguing that he had a right to have appointed counsel. We're simply arguing for a right to access counsel, which if you consider... For no expense to the government. And no expense to the government. If you consider the importance of a deportation proceeding... But you're saying he had a, you're arguing he had a right to be advised that he could be represented if he could find somebody to represent him. Yes, yes. And this is a perfectly normal... If he's standing down beside the Rio Grande River and he just came in from Mexico. Pardon, Your Honor? How would he do that if he's apprehended there on the Rio Grande and he just came across from Mexico, how's he going to find himself a lawyer? The same way that aliens in administrative removal and in regular removal proceedings where they're detained find attorneys. They're provided with a notice that tells them that they have the right to an attorney, and they're provided with a list of local attorneys who handle pro bono cases. And that's really all that we're asking that should have happened in this case. It takes approximately... That's what I was trying to get you to tell us what you really were asking for. Yes. It takes approximately, took him two weeks to be removed during which time he was detained. The notice, the 2019 notice expanding the scope of expedited removal nationwide said that the average is 11 days. So that provides sufficient time for an alien to find an attorney or at least to seek an attorney and get some legal advice if they are... And will not prejudice the government's timeline substantially. In fact, this is normal procedure even in the streamlined proceedings of administrative removal. And I see that my time is up. You have rebuttal though, and we'll get you back for some rebuttal. Let's hear from... Thank you, Your Honor. May it please the court, Kate Rumsey for the government. As the court is noting in the opening argument, the defendant has to prove under fundamental fairness that there was a due process violation and that he was prejudiced as a result of it. Here, I would like to start first maybe on the prejudice issue and then go into the due process violation for many reasons. One, we didn't really talk about it or wasn't really discussed in the opening argument, but also because many courts tend to skip right to that argument or that element because it is so dispositive. Here, if I may continue going to the first point, Mr. Guzman, as Miss Trotten is saying, alleges that he was prejudiced because he wasn't given notice of his right to access counsel and also given access to that counsel. He's not saying he wants to have counsel appointed for him, he's not saying that he wants to be notified of the ability to withdraw his application or to be able to voluntarily depart. What he is saying is that he was actually prejudiced, which is the burden that he has to prove actual prejudice, that if it wasn't for that notice of a right to counsel, he would have eventually actually been voluntarily departed and he has to show that and connect the dots all the way through. He has to start from the beginning here, which is going to judge King's point, which is that after he steps off of the river and he's in Texas, encountered by border patrol, that if he had been notified of his right to some sort of counsel, he would have actually gotten counsel. Our record does not have any information whether he actually wanted counsel at that time or whether he could afford one. I believe on JA35, part of the A file shows that he had $15 on him that immigration officials found. So he has to prove and connect actual prejudice to this alleged violation and he has not. After he could show that he would have gotten counsel, he has to also show that if that counsel was hired, that counsel would have advised him of that ability to voluntarily depart. He would have asked for it, which again, we don't know whether he was even interested of that at this point because he wanted to come to the United States to work, which is in the record. And then looking at the equities that the immigration official would have looked at in the immigration official's discretion, that immigration official would have allowed him to have that removal. There are just simply too many steps to connect the dots between each of those. And it's purely speculative at this point, based on our record, that he was even interested in counsel. And this is very similar to a case recently, United States versus Silva, where someone was also stopped at the border. That individual was actually Mirandized because the identification, that individual asked for counsel. And then later in this collateral attack, in an illegal reentry, the Fourth Circuit, reviewing what happened below, said that there was no prejudice there. They didn't, the Silva matter didn't actually get to the merits, but saying there was no prejudice. And that even in that case where somebody was even interested in counsel, because there was nothing connecting the dots between having counsel and then actually being able to voluntarily depart. So based on that factor alone, this court can begin and end its analysis on 1326d and find that Mr. Guzman has not met his burden under fundamental fairness. So if there are no other questions on the prejudice issue, then I'll move on to the second process and the Constitution. From the government's perspective, the first question I think that has to be answered here is, in a collateral attack for a 1326d motion, where does the due process piece come from? And from the government's perspective, due process has to come from the occurred in the immigration proceeding. It has to be of a constitutional significance. So the question then is, what is the constitutional due process right that is given to somebody in Mr. Guzman's position? And that's where Thurzajam's Supreme Court case comes into play, because that answers the question. Because under the Supreme Court precedent, it depends on someone's established connections in this country to determine what kind of Fifth Amendment due process rights that the alien has. That begins most recently from the Thurzajam court in 2020, this last year, which is that if somebody's on the threshold of our country, like Judge Niemeyer was pointing out, then they don't have any constitutional rights. And the analysis ends there in a habeas petition or a collateral attack. But that emanates from other case law, one of which is called Zad Vidas. It's an opinion that's often cited, and it has a quote about how aliens are given due process, no matter how temporary they're here in this country. But that quote, which I know that the appellant has used in this case, is often used out of context, because in Zad Vidas, the Supreme Court differentiates between somebody who's been admitted into this country for purposes of due process and someone who has not been admitted. And then so we just have an extension of that in Thurzajam to say that somebody who just steps off the river is still not admitted into our country, and he or she does not have due process constitutional rights. And on that piece, I wanted to note what is in the record for Judge King. On JA 34, it talks about where the individual, Mr. Guzman, last at 2130, 24.5 miles west of Hidalgo. That's where he entered on the border. And then next to that on JA 34, it says where that person was apprehended by border patrol. And that was the same day at 2200. So that was 30 minutes later after he entered, and he was squarely on the border within the sector of the Rio Grande Valley for border patrol. And that's where he was apprehended and countered. What happened the next day, according to the record, is that's when he was interviewed at McAllen. So that's the difference is that he didn't have his administrative interview until the next day, he was apprehended 30 minutes after he crossed the border. So based on that, for this panel, we believe that Mr. Guzman does not have due process constitutional rights for purposes of the fundamental fairness factor of 1326 D. And the court can find under two independent bases that he has not met his burden under 1326 D. And if there are any other questions, I'm happy to answer them. But otherwise, we would rely on our briefs and ask the court to affirm the court's judgment. Thank you. Thank you, Ms. Rumsey. Ms. Trodden, you have some rebuttal? Yes, Your Honor, I do. Thank you. So first, with respect to picking up the prejudice question, it's important to note that he only needs to show a reasonable probability that the outcome would have been different. So he does not need to show as a matter of certainty that he would have been granted withdrawal of application for admission. But second of all, and immigration- So is there evidence in the record that he would have even requested it? In other words, when confronted with the question, should you're entitled to request withdrawal, or you don't have to request withdrawal and try to get your way into the United States? Is there any evidence to suggest what he would have, how he would have answered that? There isn't, Your Honor, because the question was never presented to him. I think where I'll know to look at- But you're speculating that if he had, that he would have requested withdrawal, and I'm just saying that maybe isn't foreclosed. In other words, that's a step you probably still have to develop that. Had he had counsel, he would have requested withdrawal, and maybe he would not. Well, there's no downside to asking for withdrawal. There's no- Well, that ends the process. He then leaves, right? Yes, but a counsel would have informed him why he wanted withdrawal. Counsel would have told him, look, if you want to work in this country, you have a college education. You have positive equities in your favor. One, you should be eligible for withdrawal, and here's what you should say to the immigration officer. Two, you might be able to get an H-1B visa, or you may be able to find other ways to work in this country. There is a benefit to you to asking for withdrawal. You should just take withdrawal. You shouldn't stay and fight this. In addition, withdrawal is immediate, so an alien who's granted withdrawal of application for admission gets to leave immediately. Mr. Guzman was held for 15 or 14 days before he was actually- before he left, so I think it's entirely reasonable to believe that he would have taken withdrawal if he had known that that was available to him. An attorney certainly would have been able to provide him this information, and so even though it's not- it's enough to certainly make it something that would be valuable to him, and he does meet the criteria for it under the inspector's field manual. Unlike the defendant in Silva, he doesn't have a lengthy criminal history or a history of presenting false documents, which were some of the factors that this court looked at in Silva in recognizing why that alien would never have been granted withdrawal in the first place. Now, as to the due process question that the government raises, this court has long recognized that aliens in 1326 proceedings whose removal is used as the basis for their criminal liability do have due process rights, and the Supreme- this court in Lopez Collazo recognized that those rights are at least the right to be heard in a meaningful time and in a meaningful manner. Now, that doesn't require that you have- That's in the context of a criminal. We recognize that in Silva too. I mean, when a criminal prosecution looms, every criminal prosecution is conducted in accordance with our constitution, and so- Exactly. Yeah, and so we give all the rights there. So we're in the exact same place. The government's argument, if it were- the government essentially argues that he had no due process rights even now. Not for the expedited removal. He has due process rights when he's convicted of a crime, or charged with a crime, or threatened with the charge of a crime. In other words, when he comes back in, all of a sudden due process rights kick in because now he's committed a crime. And in Silva, there was a fraud claim, and the officer said, because he comes back so many times, the officer said, we're now going to prosecute you. At that point, he was given Miranda warnings, and so all the due process kicks in. But just on expedited removal, that I don't know of any case that holds that due process applies there. Well, the thing is, your honor, I think we need to look at it from the perspective of an alien who is facing criminal liability now. And I would point the court to Judge Motz's concurrence in United States versus Wilson, where she recognized that of course, aliens in these proceedings do have a liberty interest in not being subjected to criminal liability based on a fundamentally unfair deportation. As the Supreme Court recognized in Mendoza-Lopez, quote, if the statute envisions that the court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may be, the statute does not comport with the constitutional requirements of due process. Well, I think that's why you're here and making such a good argument, because we're giving the man due process. On the criminal prosecution, I don't think there's any issue. I don't think the government's asserting that either. The question is, in this criminal prosecution where we're now pursuing due process, we are exploring one of the elements, which was a prior removal. And your argument is the prior removal is being challenged as an element because it's fundamentally unfair. And it was fundamentally unfair because he was not notified about counsel and the prior removal. But it's very clear that in this prosecution, he's entitled to the full array of due process. And I hope you get every element of that and more. Thank you, Your Honor. May I respond? I see my time is up. Of course. Yes, yes. A chain is only as strong as its weakest link. And so if a removal that is entirely bare of any process can be used as the basis for criminal liability, then it really doesn't comply with 1326D or Mendoza-Lopez's requirements. If the alien has no due process rights... It says it has to be due process and prejudice in the prior, assessing the fairness. And of course, when you go back to assess the fairness of the expedited, you have to ask the two questions. Was he denied due process? And of course, the Supreme Court says due process is what Congress authorizes at the border. And the second is whether he was prejudiced by that, any denial. And so those are the two prongs I think you have to establish. Yes, Your Honor. And with respect to the due process, first, as I understand it, the government is arguing that the only constitutional level due process will do for the 1326D analysis. And so not statutory compliance, which I think is incorrect under the court's precedent, as you note. But second, with respect to the process that he's due, I think here he is because he is subject to criminal liability. And because that... At the time we came in, he wasn't subject to criminal process. No, he wasn't. And it may be helpful to think to analogize due process, if I may, to something else so that we can have another way to think about this. So if you think of due process as something like a piece of personal protective equipment, like a helmet, it's perfectly appropriate to, if you're riding a bicycle, to only wear a bicycle helmet. But if someone's going to put you on a motorcycle, you need to have more substantial protection. You need a motorcycle helmet. So if here he has only been given a bicycle helmet, but he's been put on a motorcycle, he's been put into criminal proceedings, the requirements, I think, and this court has recognized, certainly in Smith v. Ashcroft, that the requirements of due process for immigration purposes and the requirements of due process for criminal purposes, when an alien is being subject to criminal liability based on their removal, are different. That's why the court recognized that Mendoza-Lopez did not apply in Smith v. Ashcroft. And that's why, in addition, Thurassigam comes out differently than Mendoza-Lopez itself or other cases where the courts have recognized that aliens have to have a right to judicial review under due process. I think we've covered it. We're a little over time. And I want to express our appreciation for your arguments. This is very important, of course, to the parties. It's our tradition, as you know, in the Fourth Circuit to come off the bench and come down in the well of court and greet counsel. And we would love to do that today. But, of course, we can't. But I know both of you will be back. And we'll greet you at that time. But in the meantime, many thanks for your fine arguments. And we'll adjourn court for the day. Thank you very much. Thank you, Your Honor. Thank you, Judge. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, Allison J. Rushing